ROBERTA L. STEELE, CA Bar No. 188198
Regional Attorney
MARCIA L. MITCHELL, WA Bar No. 18122
Supervisory Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
San Francisco District Office
450 Golden Gate Avenue
5 West, P.O. Box 36025
San Francisco, California 94102
marcia.mitchell@eeoc.gov
Tel: (650) 684-0934

TERI L. HEALY, DC Bar No. 978319
Senior Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY
 COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington, 98104-1061
teri.healy@eeoc.gov
Tel: (206) 576-3018

ATTORNEYS FOR PLAINTIFF EEOC

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>CAMPUSPOINT CORPORATION AND VIEWPOINT, INC.<br><br>    Defendants. | CASE NO. 3:21-cv-01429-SB<br><br>[PROPOSED] CONSENT DECREE |

# I. INTRODUCTION

1. This action originated when Indigo Matthew filed charges of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). Matthew alleged that CampusPoint Corporation and Viewpoint, Inc. (collectively "Defendants" and individually, "Defendant", "CampusPoint" or "Viewpoint"), discriminated against him in violation of the Americans with Disabilities Act of 1990, as amended, and Title I of the Civil Rights Act of 1991 ("ADA") when Defendants failed to hire him because of his disability.

2. On April 22, 2021, the EEOC issued Letters of Determination, finding reasonable cause to believe that CampusPoint and Viewpoint violated the ADA. Thereafter, EEOC and Defendants attempted to conciliate the charge and conciliation was unsuccessful.

3. The EEOC filed this lawsuit on September 28, 2021 in the United States District Court for the District of Oregon, alleging that Defendants, acting as joint employers, violated the ADA when they (1) denied employment opportunities to Matthew, including the opportunity to interview for and be hired into a Product and Pricing Analyst position at Viewpoint; (2) failed to hire Matthew to work at Viewpoint because of his disability; and (3) failed to provide reasonable accommodations that would have enabled him to interview for the Product and Pricing Analyst position and, ultimately, to work in that role. Defendants deny the EEOC's allegations.

4. The parties want to conclude fully and finally all claims arising out of the EEOC's Complaint and Matthew's charges of discrimination filed with the EEOC. The EEOC and Defendants enter into this Consent Decree to further the objectives of equal employment opportunity as set forth in the ADA.

In consideration of the mutual promises made by the parties, the sufficiency of which is hereby acknowledged, it is therefore **ORDERED**, **ADJUDGED** AND **DECREED** that:

## II. GENERAL PROVISIONS

5. This Court has jurisdiction over the subject matter and the parties to *EEOC v. CampusPoint Corporation and Viewpoint, Inc*. Venue is proper in this District because the alleged discrimination occurred in Portland, Oregon.

6. The Consent Decree shall become effective upon its entry by the Court.

## III. SETTLEMENT SCOPE

7. This Consent Decree constitutes a full resolution of all allegations of unlawful employment practices contained in Matthew's discrimination charges, in the EEOC's administrative determinations, and in the EEOC's Complaint filed in this lawsuit, including all claims by the parties for attorney fees and costs.

8. This Consent Decree does not affect the EEOC's right to process any charges that may be pending before the agency that are not covered by this Decree or future charges that may be filed against Defendants or related entities and does not affect the EEOC's right to seek relief and/or commence civil actions on any such charges.

## IV. MONETARY RELIEF

9. Defendant Viewpoint shall pay Matthew One-Hundred Twelve Thousand Five Hundred dollars ($112,500.00) within twenty (20) business days of the entry date of this Consent Decree. This payment shall include specific amounts for back pay and compensatory damages for emotional distress. EEOC shall provide Viewpoint with Matthew's IRS form W-4 and IRS form W-9 within five (5) days of the entry of this Decree. Viewpoint shall make payment by two checks – one check for wage damages in the amount of Eleven Thousand dollars ($11,000.00) less applicable withholdings and taxes, and another check for non-wage damages,

in the amount of One-Hundred and One Thousand, Five Hundred dollars ($101,500.00), each made payable to Indigo Matthew.

10. Defendant CampusPoint shall pay Matthew One-Hundred Twelve Thousand Five Hundred dollars ($112,500.00) within twenty (20) business days of the entry date of this Consent Decree. This payment shall include specific amounts for back pay and compensatory damages for emotional distress. EEOC shall provide CampusPoint with Matthew's IRS form W-4 and IRS form W-9 within five (5) days of the entry of this Decree. CampusPoint shall make payment as follows:

> a. A check payable to Indigo Matthew in the amount of Eleven Thousand dollars ($11,000.00), less all appropriate withholdings, for lost wages for which an IRS W-2 shall be issued; and
>
> b. An ACH electronic payment to Indigo Matthew in the amount of One-Hundred and One Thousand, Five Hundred dollars ($101,500.00), in full and final payment of the non-wage balance of the settlement for which an IRS 1099-MISC shall be issued.

11. Defendants shall mail any checks via certified mail to an address that the EEOC will provide to Defendants within twenty (20) days of the entry of this Decree. Defendants will issue an IRS form W-2 for the wage payment and an IRS form 1099-MISC for the payment of non-wage damages. Defendants shall each transmit proof of payment, together with an accounting of the employee deductions and employer contributions made, and tracking information for the delivery of the payment to EEOC via email at:

SEFO-CAMPUSPOINT@eeoc.gov and EEOC-SEFO_COMPLIANCE@eeoc.gov

12. Defendants will not condition the receipt of monetary relief on Matthew's agreement to (a) maintain as confidential the facts and/or allegations underlying his charges and the complaint and the terms of this Decree; (b) waive his statutory right to file a charge with any governmental agency; (c) a non-disparagement and/or a confidentiality agreement; or (d) refrain from reapplying for a job with Defendants.

13. If Defendants fail to make the payments described in paragraphs, 9 and 10, above, then the noncompliant Defendant(s) agrees to pay interest on its defaulted payments at a rate calculated pursuant to 26 U.S.C. §6621(b) of the Internal Revenue Code until the same is paid, and to bear any additional costs incurred by the EEOC caused by the non-compliance or delay, including but not limited to any and all costs arising out of the EEOC's efforts to enforce this Decree in federal court.

## V. INJUNCTIVE AND OTHER RELIEF

### A. General Provisions

14. Defendants, including their officers, agents, managers, supervisors, recruiters, and all human resource employees who make hiring decisions or decisions concerning reasonable accommodation of applicants who are deaf or hard of hearing, and their successors and assigns are enjoined from any present or future violations of the ADA that include:

   a. denying employment opportunities, including the opportunity to interview for and to be hired into positions;
   b. failing to hire individuals on the basis of disability; and
   c. failing to provide reasonable accommodations that will enable applicants to interview for positions and, ultimately, to work in the position sought.

15. During the term of the Decree, Defendants will provide prior written notice about the EEOC's complaint and the existence and contents of this Decree during the due diligence process and before any sale is finalized to all potential purchasers of Defendants' businesses,

facilities, business units or other segment of their businesses, and to any potential successor that purchases or assumes all or a portion of Defendants' assets.

16. Viewpoint is a wholly owned subsidiary of Trimble, Inc., the latter of which is not a Defendant in the lawsuit or a signatory to this Consent Decree. If during the term of this Decree, Viewpoint is subsumed into Trimble and ceases to have a separate corporate status, but remains a separate, objectively identifiable section of Trimble (a division, or something equivalent) the Consent Decree will continue to apply to Viewpoint although it is no longer a separate corporate entity. In the event Viewpoint is subsumed into Trimble during the term of the Decree, Viewpoint shall provide information within 10 business days of effectuation to the EEOC describing the change in relationship between the two entities. EEOC may request additional information as necessary to determine the scope of the Decree's application.

**B. Anti-Discrimination Policies and Procedures**

In recognition of their obligations under the ADA, Defendants shall institute the policies and practices set forth below.

17. For the duration of this Consent Decree, each Defendant shall ensure that its anti-discrimination policies specifically prohibit disability discrimination and explain to employees their rights and responsibilities under the ADA (the "ADA Policies").

18. Within ninety (90) days of entry of this Decree, each Defendant shall develop and implement Equal Employment Opportunity policies that:

   a. Require Defendants to cooperate with applicants or employees who request accommodation, whether temporary or regular (non-temporary) position, in order to conduct an individualized assessment as to whether an applicant or employee is able to perform the essential functions of the job they seek with or without a reasonable accommodation.

   b. Require Defendants when filling vacant positions to provide written notification to applicants, whether applying for a temporary or regular (non-

temporary) position, of the existence and availability of their respective reasonable accommodation processes.

c. Set forth a detailed reasonable accommodation process that requires Defendants to gather sufficient information from applicants, employees and qualified experts, to identify reasonable accommodations that will enable the applicant or employee to perform the essential functions of the position sought or held. At a minimum, the process shall include: conferring with the applicant or employee to determine the job duties affected by disability and to discuss potential accommodations; including those accommodations proposed by the applicant or employee; where there are questions or disputes about an appropriate accommodation, utilizing third-party resources to identify potential accommodations or to assist in the interactive process, i.e., subject-matter experts, such as vocational or occupational rehabilitation specialists, disability rights organizations, the Job Accommodation Network (https://askjan.org/) and medical professionals; consulting with or obtaining information from a resource proposed by the applicant or employee unless doing so would impose an undue hardship on the Defendants' business operations.

d. If Defendants reject a resource proposed by the applicant or employee, they shall notify the applicant or employee in writing about the reasons for the rejection and shall confer with the applicant or employee about a practical alternative resource.

e. Explicitly define a process requiring the Defendants to consider the factors outlined in ADA regulations, 29 C.F.R. §1630.2(p), before concluding that an accommodation imposes an undue hardship, and requiring them to determine undue hardship on a case-by-case basis.

f. Require their Human Resources and hiring officials to memorialize all ADA related matters, specifically reasonable accommodation requests and assessments, undue hardship and direct threat determinations and to retain all associated records throughout the duration of this Decree.

g. If denying an job applicant or employee's accommodation request and before taking an adverse action against an applicant or employee based on a medical condition or disability, inform the applicant or employee in writing of: (1) the impairment Defendant understands to require reasonable accommodation; (2) the essential function(s) it contends are affected by the impairment; and (3) the basis for its decision, including, if applicable; that an accommodation constitutes an undue hardship or the nature of a safety risk, or that it believes a third-party is responsible for providing or funding the accommodation,

h. Establish a process for applicants and employees, whether for temporary or regular (non-temporary) positions, to internally appeal Defendant'(s) rejection of their requests for accommodation. The internal appeal process must allow the applicant or employee to have the opportunity to explain the reasons why they believe that Defendant'(s) conclusion was incorrect.

      i. Implement a process, after granting an accommodation, requiring Defendants to follow-up with the employee, whether temporary or regular (non-temporary) position (and presuming the individual remains employed), within three (3) months of implementation of the accommodation. Defendants shall maintain written records of these consultations throughout the duration of the Decree.

      j. Identify multiple points of contact through which applicants and employees, whether for a temporary or regular (non-temporary) position, may request a reasonable accommodation and/or lodge a complaint, including the telephone numbers, addresses, and email addresses for each point of contact. Applicants who apply online to Defendants will be directed to request accommodations by email during the online application process, as set forth in paragraph 22 below.

19. The policies described in this section shall be provided to the EEOC for review and comment no later than thirty (30) days prior to their implementation. Within fourteen (14) days of receipt, the EEOC will review the proposed policies and procedures and advise Defendants of any comments it has.

20. Not later than one hundred twenty (120) days after entry of this Consent Decree, Defendants shall distribute the ADA policies described in paragraph 18 to all their employees and annually, thereafter. Defendants will also each provide the policies within fifteen (15) days to every employee hired or re-hired during the duration of the Decree.

21. Policy Modifications: If Defendants modify any of the policies required by this section, (except for changing of the contact information of individuals identified in the policy or updates implemented to comply with state law), Defendants shall submit proposed modifications to the EEOC for its review and consideration no later than thirty (30) days before adoption of the modified policy. Within fourteen (14) days of receipt, the EEOC will review the proposed modifications and advise Defendants of any comments.

### C. Online Application Website Modification

22. Not later than one hundred and twenty (120) days after the entry of this Consent Decree, Defendant Viewpoint shall modify its "Careers" website page and CampusPoint shall

modify its "Jobseekers" website page to include a statement to applicants that it is an equal employment opportunity employer. The webpages shall inform applicants seeking an accommodation during the application process to make such a request using an email address that will be listed on the website. Additionally, Defendants shall include a hyperlink at the beginning of their online applications which will allow the user to request an accommodation directly through the online application. These modifications to the website will be separate from or in addition to any statements regarding accessibility of the website. Defendants will designate personnel responsible for answering the requests for accommodation in the application that are transmitted through their websites.

### D. Training

23. Not later than sixty (60) days after Defendants distribute the policies described in Section V B above, and annual thereafter, Defendants shall each provide in-person or live virtual interactive Americans with Disabilities Act training to all Managers, Human Resources personnel, Recruiters, and any personnel involved in hiring, interviewing, recommending applicants for hire, or evaluating requests for reasonable accommodation. The training shall be in addition to any other training provided to these employees and shall be no less than four (4) hours. Defendants may provide a 90-minute training to any employees who have received the four-hour training in the prior two years. The training shall include, at a minimum:

   a. An overview of the ADA emphasizing appropriate interview questions and hiring procedures;
   b. An admonition that retaliation against an applicant or employee, including temporary employee, who requests an accommodation or complains of discrimination is prohibited;
   c. A discussion emphasizing the positive impact and contributions that disabled employees can have on the workforce;

d. Instruction on Defendants' respective revised EEO policies relating to the ADA and responding to requests for reasonable accommodation, including the appeals process;

e. A discussion of various forms of reasonable accommodations, including, but not limited to accommodations for deaf or hard of hearing employees and applicants that include, but are not limited to using ASL interpreters;

f. The presentation of specific case scenarios tailored to the workplace including, but not limited to scenarios involving accommodating people who are deaf, hard of hearing and/or speech impaired, information about a variety of accommodations available to them, and how to work with Human Resources or Defendants' attorneys to identify resources regarding potential accommodations, such as the Job Accommodation Network (https://askjan.org), and scenarios demonstrating how the interactive process should work;

g. The training shall be aimed toward helping attendees understand how to define and identify disability discrimination and retaliation, and the internal process to follow to review and respond to each request for a reasonable accommodation;

h. In connection with training mandated as part of this Consent Decree, Defendants' Managers, Human Resources personnel, Recruiters, and any personnel involved in hiring, interviewing, or recommending applicants for hire, and individuals responsible for evaluating requests for reasonable accommodation shall be advised that they are responsible for complying with the policies in Section V B. They will also be notified that violations of Defendants' anti-discrimination policies and procedures shall result in appropriate discipline up to and including termination. In addition, managers, supervisors, Human Resources, hiring, and recruiting personnel shall be advised of their obligation to report, prevent, and correct any discrimination, harassment, or retaliation they observe or become aware of in the workplace, and that failure to take action may result in disciplinary action up to and including termination.

24. After the initial training required by paragraph 23, above, Defendants will require that all employees who become Managers, Human Resources personnel, Recruiters, and any personnel involved in hiring, interviewing, or recommending applicants for hire, and individuals responsible for evaluating requests for reasonable accommodation receive training prior to any involvement in the hiring or interviewing of any applicant or employee or the determination of whether they are entitled to reasonable accommodation.

25. The training described in this section shall be developed and conducted by a training professional with established experience and expertise in the ADA. Defendants shall submit the name of the trainer, the curriculum vitae for the trainer, and training materials to the EEOC for its review and consideration no later than thirty (30) days before the training. Within fourteen (14) days of receipt, the EEOC will review the proposed modifications and advise Defendants of any comments.

26. All training materials shall be submitted to the EEOC for review and comment no later than forty-five (45) days prior to holding the first training sessions. Within fourteen (14) days of receipt, the EEOC will advise Defendants of any comments.

27. The cost of training shall be borne by Defendants.

28. If either Defendant modifies the EEO trainings identified in this provision during the duration of the Consent Decree, the Defendant shall submit the proposed modifications to the EEOC for its review and comment no later than forty-five (45) days before adoption. Within fourteen (14) days of receipt, the EEOC will advise the Defendant of any comments.

29. For the duration of this Consent Decree, as described in paragraph 37 below, Defendants shall notify the EEOC of the completion of the training and shall specify the names and job titles of the individuals who attended each of the training sessions.

### E. Notice Designed to Promote Accountability

30. Within thirty (30) days, after the entry of this Decree and annually thereafter, Defendants shall notify in writing Managers, Supervisors and Human Resources, hiring, and recruiting personnel that they are required to comply with Defendants' Policies in Section VB. The notice shall also advise that violations of Defendants' anti-discrimination policies and procedures shall result in appropriate discipline up to and including termination. In addition, the

notice shall advise these employees of their obligation to report, prevent, and correct any discrimination, harassment, or retaliation they observe or become aware of in the workplace, and that failure to take action may result in disciplinary action up to and including termination.

### F.  Viewpoint's Relationship with Domestic Staffing Agencies

31.   Within one hundred and eighty (180) days of the entry of the Consent Decree, Defendant Viewpoint shall provide to all domestic staffing agencies with which it contracts a notice which contains a copy of Viewpoint's policies outlined in Section V B and the following:

   a. Viewpoint's expectation that the staffing agency will follow the ADA and a copy of Viewpoint's policies outlined in Section I;

   b. A statement that Viewpoint's policies are promulgated at the direction of and with endorsement by the highest level of Viewpoint management.

   c. An express statement outlining Viewpoint's expectation that the staffing agency will refer and place workers for open positions without regard to disability;

   d. A statement that failure to comply with Viewpoint's ADA policies may result in Viewpoint discontinuing its relationship with the staffing agency;

   e. A statement outlining Viewpoint's expectations regarding the steps its staffing agencies should take in the event that an applicant for a position at Viewpoint needs an accommodation under the ADA, along with the identities of specific individuals within Viewpoint that must be contacted when an applicant requests a reasonable accommodation for the hiring process or in order to perform the essential functions of the position. Viewpoint shall advise the staffing agency that, at a minimum these steps must:

   i. Require that Viewpoint's staffing agencies conduct an individualized assessment of whether the individual is able to perform the essential functions of the job they seek or hold either with or without a reasonable accommodation;

   ii. Set forth a detailed process which Viewpoint and its contractors will follow to ensure that they meaningfully engage the applicant or employee and each other in the interactive process, including ensuring that they gather sufficient information from the applicant, employee and other sources to determine whether the employee is able to perform the essential functions of the job they seek or hold either with or without a reasonable accommodation;

      iii. Define the process necessary to determine if an accommodation will impose an undue hardship and require that the determination must be conducted on a case-by-case basis;

      iv. Explain the respective roles and responsibilities for Viewpoint and its staffing agencies in the reasonable accommodation process and establish a procedure to determine how the costs of accommodations will be divided between Viewpoint and its staffing agencies; and

      v. Require that actions taken with regard to a request for accommodation must be memorialized in writing.

32. Beginning on the Effective Date and continuing for the entire duration of the Consent Decree, Viewpoint shall, in any new or renewed contract or agreement with any staffing agency, and as a condition of doing business, require that the staffing agency comply with the provisions of the ADA, including providing reasonable accommodations to applicants and employees and engaging in the interactive process. The new or renewed contract or agreement shall include:

    a. The expectation that the staffing agency will notify Viewpoint when an applicant for a Viewpoint position requests an accommodation for a disability;

    b. The process regarding how Viewpoint and the staffing agency will consider and provide accommodations to applicants and temporary employees placed at Viewpoint, including ensuring that they fully engage in the interactive process;

    c. A procedure for Viewpoint and the staffing agency to follow to ensure they fully engage in the interactive process;

    d. A statement that no applicant should be screened out on the basis of disability; an agreement acknowledging their shared obligations to provide accommodations for applicants and temporary employees and setting forth how reasonable accommodations will be provided and how the costs of any requested accommodation will be allocated among and between Viewpoint and the staffing agency;

    e. Recognition that both Viewpoint and the staffing agency have independent obligations to evaluate their respective resources to determine whether the accommodation will impose an undue hardship and that, depending on their respective resources, either or both might be obligated to contribute to the accommodation's costs.

33. Viewpoint shall submit to the EEOC, for its review and comment, the proposed notice outlined in Paragraph 31 and proposed contract provisions outlined in Paragraphs 32 no

later than thirty days (30) prior to implementation. Within fourteen (14) days of receipt, the EEOC will advise Defendant of any comments.

### G. CampusPoint's Relationship with its clients.

34. Within ninety (90) days of the Effective Date, Defendant CampusPoint shall provide to all clients with which it contracts a copy of CampusPoint's policies outlined in Section V B and a notice containing the following:

   a. CampusPoint's expectation that the client will follow the ADA and a copy of CampusPoint's policies outlined in Section VB;
   b. A statement that CampusPoint's policies are promulgated at the direction of and with the endorsement of the highest level of CampusPoint management.
   c. A statement outlining CampusPoint's expectation that its client will consider workers recruited or referred for, or placed into open positions without regard to disability;
   d. A statement that failure to comply with CampusPoint's ADA policies may result in CampusPoint discontinuing its relationship with the client;
   e. CampusPoint's expectations regarding the steps its clients should take in the event that an applicant or temporary worker needs an accommodation under the ADA, along with the identities of specific individuals at CampusPoint that the client must contact when an applicant requests a reasonable accommodation for the hiring process or in order to perform the essential functions of the position. At a minimum these must:
      i. Require that CampusPoint's clients conduct an individualized assessment of whether the individual is able to perform the essential functions of the job they seek or hold either with or without a reasonable accommodation;
      ii. Set forth a detailed process which CampusPoint and its clients will follow to ensure that they meaningfully engage the applicant or employee and each other in the interactive process, including ensuring that they gather sufficient information from the applicant, employee and other sources to determine whether the employee is able to perform the essential functions of the job they seek or hold either with or without a reasonable accommodation;
      iii. Define the process necessary to determine if an accommodation will impose an undue hardship and require that the determination must be conducted on a case-by-case basis;
      iv. Explain the respective roles and responsibilities for CampusPoint and its clients in the reasonable accommodation process and set forth how

> the costs of accommodations will be divided between CampusPoint and its clients; and
>> v. Require that all actions taken with regard to a request for accommodation must be memorialized in writing.

35. Within ninety (90) days of the Effective Date and continuing for the entire duration of the Consent Decree, CampusPoint shall, in any new or renewed contract or agreement with any client, and as a condition of doing business, require that the client comply with the provisions of the ADA, including providing reasonable accommodations to applicants and employees referred to or placed with them and engaging in the interactive process. The contract or agreement shall include:

> a. The expectation that both parties will notify the other when an applicant for a position requests an accommodation for a disability;
> b. Specific procedures for how the parties will consider and provide accommodations to applicants and temporary employees referred to or placed at the client;
> c. A procedure for CampusPoint and the client to follow to ensure they fully engage in the interactive process;
> d. A statement that no applicant should be screened out on the basis of disability;
> e. An agreement acknowledging their shared obligations to provide accommodations for applicants and temporary employees and setting forth how reasonable accommodations will be provided and how the costs of any requested accommodation will be allocated among and between CampusPoint and the client;
> f. Recognition that both CampusPoint and its client have independent obligations to evaluate their respective resources to determine whether the accommodation will impose an undue hardship and that, depending on their respective resources, either or both might be obligated to contribute to the accommodation's costs.

36. CampusPoint shall submit to the EEOC, for its review and comment, the proposed notice outlined in Paragraph 34 and the proposed contract provisions outlined in Paragraph 35 no later than sixty days (60) from the Effective Date of this Decree. Within fourteen (14) days of receipt, the EEOC will advise Defendant of any comments.

### H. Reporting

EEOC v. CAMPUSPOINT CORPORATION AND VIEWPOINT, INC.
3:21-cv-01429-SB
[PROPOSED] CONSENT DECREE - 15

37. Beginning six months from the effective date of this decree, and annually thereafter, Defendants shall report separately and in writing to the EEOC for a period of four (4) years. These annual reports shall contain the following information and attachments:

    a. Certification under penalty of perjury that Defendants have:
        i. Continued to maintain their written ADA policies, procedures and Recruiter/Hiring Employee Documentation and have distributed copies of these documents as described in Section V B;
        ii. Complied with the training provisions enumerated in this Consent Decree, as provided in Section V D, including the date(s) on which the training was completed;
        iii. Continued to promote accountability for compliance with the ADA as required by Sections V D and V E; and Otherwise complied with all other provisions of this Consent Decree.
    b. Copies of the following documents shall be included with each annual report submitted to the EEOC:
        iv. A list of all training attendees, with job titles, for each training completed;
        v. Defendants' current ADA policy, procedures, and documentation maintained in accordance with the provisions of this Consent Decree and a list of any changes, modifications or revisions, if any, to these policies;
        vi. A summary of requests for accommodation and internal formal or informal complaints from applicants or employees who have identified themselves as deaf or hard of hearing. The report should identify the applicant or employee using a unique identifier, and include a description of the accommodation sought, any alternative accommodations offered, the accommodation, if any, that the Defendant provided, an explanation of the reason for denying a request, and, for complaints, a summary of the complaint, the actions taken by the Defendant and the resolution of each complaint;
        vii. Complied with the training provisions enumerated in this Consent Decree, as provided in Section V D, including the date(s) on which the training was completed; and
        viii. Continued to promote accountability for compliance with the ADA as required by Section V E; and
        ix. Complied with all other provisions of this Consent Decree.

38. Reports are to be submitted to EEOC via email at:

SEFO-CAMPUSPOINT@eeoc.gov and EEOC-SEFO_COMPLIANCE@eeoc.gov

### I. Posting

39. Within thirty (30) days of the effective date of this Decree, Defendants shall post a Notice to All Employees. This Notice is attached as Exhibit A to this Consent Decree. The Notice shall be conspicuously posted for the duration of the Consent Decree.

### VI. ENFORCEMENT

40. If the EEOC determines that either or both Defendants have not complied with the terms of this Consent Decree, the EEOC shall provide written notification of the alleged breach to the appropriate Defendant(s), and the Defendant(s) shall have the opportunity to correct the alleged breach. The EEOC shall not petition the Court for enforcement of this Consent Decree for at least forty-five days (45) days after providing written notification of the alleged breach. The EEOC and Defendant(s) shall utilize the 45-day period to engage in good-faith efforts to resolve the dispute.

### VII. RETENTION OF JURISDICTION

41. The United States District Court for the District of Oregon shall retain jurisdiction over this matter for the duration of this Consent Decree, for enforcement purposes.

42. This Consent Decree shall be in effect for four (4) years from the date of entry of the Decree. If the EEOC petitions the Court for breach of this Consent Decree, and the Court finds Defendants to be in violation of the terms of the Consent Decree, the Court may extend the duration of this Consent Decree.

Dated this 3rd day of June, 2022

| | |
|---|---|
| ROBERTA STEELE | CHRISTOPHER LAGE |
| Regional Attorney | Deputy General Counsel |

| MARCIA L. MITCHELL<br>Supervisory Trial Attorney | GWENDOLYN YOUNG REAMS<br>Associate General Counsel |
|---|---|
| Teri L. Healy<br>Senior Trial Attorney | Office of the General Counsel<br>131 "M" Street, N.E.<br>Washington, D.C. 20507 |

BY: */s/ Roberta L. Steele*
Roberta L. Steele
Regional Attorney
Seattle Field Office
909 1st Avenue, Suite 400
Seattle, Washington 98104-1061
Telephone (650) 684-0939
Facsimile (206) 220-6196
roberta.steele@eeoc.gov

Attorneys for Plaintiff

By: */s/ Christopher Hawk*
Christopher Hawk
Gordon & Rees
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
(503) 227-8269
chawk@grsm.com

Attorneys for Defendant CampusPoint Corporation

By: */s/ Courtney Angeli*
Courtney Angeli
Buchanan Angeli Altschul & Sullivan LLP
921 SW Washington Street, Suite 516
Portland, OR 97205
503-974-5021
Courtney@baaslaw.com

Attorneys for Defendant ViewPoint, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing [PROPOSED] CONSENT DECREE with the Clerk of the Court using the CM/ECF system.

DATED this 3rd day of June, 2022

*/s/ Rebecca Eaton*
REBECCA EATON
Paralegal Specialist
EEOC Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104-1061
Telephone: 206-576-3028
Email: rebecca.eaton@eeoc.gov